## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KENNETH D. McQUEEN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:21-00298-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| ***Commissioner of Social Security***, | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth D. McQueen brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 13, 14) and those portions of the transcript of the administrative record (Doc. 12) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 16, 17, 18).

# I.   *Procedural Background*

McQueen protectively filed the subject DIB application with the Social Security Administration ("SSA") on September 19, 2016. After the application was initially denied, McQueen requested, and on October 6, 2020, received, a hearing on his application with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations. On December 9, 2020, the ALJ issued an unfavorable decision on McQueen's application, finding him not entitled to benefits. (*See* Doc. 12, PageID.60-82).

The Commissioner's decision on McQueen's application became final when the Appeals Council for the SSA's Office of Appellate Operations denied his request for review of the ALJ's unfavorable decision on May 21, 2021. (*See id.*, PageID.49-53). McQueen subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision.[3] *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec.*

---

[3] The same ALJ held a hearing on the subject application on August 1, 2018, and issued an unfavorable decision on October 31, 2018. (*See* Doc. 12, PageID.148-168). However, on September 5, 2019, the Appeals Council granted McQueen's request for review, vacated the 2018 unfavorable decision, and remanded the case to the ALJ for a new hearing and decision, with instructions. (*See id.*, PageID.169-172). The ALJ's second unfavorable decision issued in 2020 following that remand is reviewed here as the Commissioner's final decision.

*Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357

F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden

upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner,*

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing

---

No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x

912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires, among other things, that a claimant be "under a disability[,]" 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*,

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is

responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is

supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

## III.   *Summary of the ALJ's Decision*

At Step One, the ALJ found that McQueen met the applicable insured status requirements through December 31, 2021, and that he had not engaged in substantial gainful activity since the alleged disability onset date of March 31, 2016.[8] (Doc. 12, PageID.65). At Step Two, the ALJ found that McQueen had the following severe impairments: visual disturbances; hypertension; asthma; affective disorders, including depression and post-traumatic stress disorder (PTSD); and anxiety disorders.[9] (Doc. 12, PageID.66-67). At Step Three,[10] the ALJ found that

---

[8] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.'" *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] Step Three "identif[ies] those claimants whose medical impairments are so severe

McQueen did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 12, PageID.67-68).

At Step Four,[11] the ALJ determined that McQueen had the residual

---

that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an

functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[12] except he is limited to simple, routine work with no more than frequent changes in work setting[;] should have no more than occasional interaction with the public and no more than frequent interactions with co-workers and supervisors[;] is blind in the right eye and has some loss of left eye acuity[, but] can avoid usual workplace type hazards, can work with small and large objects, and can read written material of a reasonable size[;] can frequently climb ladders, ropes, or scaffolds[;] can occasionally stoop and crawl[; and] must avoid concentrated exposure to pulmonary irritants or hazards like machinery and unprotected heights." (Doc. 12, PageID.69-74).

---

administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Based on the RFC and the testimony of a vocational expert,[13] the ALJ found that McQueen was unable to perform any past relevant work. (Doc. 12, PageID.74-75). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as a laundry folder (155,000 jobs nationally), factory helper (270,000 jobs nationally), and sorter (approximately 180,000 jobs nationally) that McQueen could perform given his RFC, age, education, and work experience. (*Id.*, PageID.75-76). Thus, the ALJ found that McQueen was not "disabled" under the Social Security Act. (*Id.*).

## IV.   *Analysis*

### a.   Listing 12.15

McQueen first argues that the ALJ failed to adequately consider whether he met Listing 12.15 at Step Three. The undersigned is not persuaded.

As the undersigned has recently explained,[14] the Eleventh Circuit Court of Appeals generally does not require the Commissioner to provide detailed reasoning at Step Three. Though it has "noted 'that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant

---

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[14] *See Mozingo v. Kijakazi*, No. CV 1:20-00504-N, 2022 WL 2333885, at *8 (S.D. Ala. June 28, 2022).

has argued[,]' " "specific findings as to the Listings in Appendix 1 are not required…" *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 842 n.5 (11th Cir. 2019) (per curiam) (unpublished) (alterations added) (quoting *Barron v. Sullivan*, 924 F.2d 227, 230 n.3 (11th Cir. 1991)). Rather, "[w]hile Appendix 1 must be considered in making a disability determination, it is not required that the [Commissioner] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Building on that point, the Eleventh Circuit has held it was "clear that [an] ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that [a claimant] did not meet any of the Appendix 1 impairments[,]" and proceeded to review that finding for substantial evidence. *Id. See also Bailey*, 782 F. App'x at 842 ("Here, the ALJ identified as a severe impairment Bailey's cirrhosis of the liver with both ascites, which relates to Listing 5.05B, and with hepatic encephalopathy, which relates to Listing 5.05F. The ALJ also explicitly found that Bailey's impairments, individually and in combination, did not meet any listed impairment. The ALJ then proceeded to steps four and five of the sequential analysis. Thus, the ALJ's explicit finding that Bailey's impairments did not meet a listed impairment included implicit findings that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy did not meet Listing 5.05B or F. Under our precedent, the ALJ was not required to make more explicit findings as to Listing 5.05B and F." (citing *Hutchison*, 787 F.2d at 1463)); *Carstarphen v. Kijakazi*, No. CV 1:20-00506-N, 2022 WL 957552, at *7-10

(S.D. Ala. Mar. 29, 2022) (determining, after surveying and harmonizing at-times conflicting Eleventh Circuit precedent, that detailed findings are generally not required at Step Three).

Listing 12.15, which covers "trauma- and stressor-related disorders," is divided into three paragraphs, A, B, and C, each with its own criteria. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.15. A claimant must satisfy the paragraph A criteria <u>and</u> *either* the paragraph B or C criteria in order to meet Listing 12.15. *See id.* To satisfy the paragraph B criteria, the claimant must show either an extreme limitation in one, or marked limitation in two, of four listed areas of mental functioning. *See id.*, § 12.15B. The C criteria require production of certain specified evidence to show that the claimant's mental disorder is "serious and persistent." *See id.*, § 12.15C.[15]

Here, the ALJ expressly found at Step Three that "[t]he severity of [McQueen]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing[] … 12.15." (Doc. 12, PageID.67). In doing so, the ALJ evaluated each of the B criteria but found less than marked limitation in each. (*See id.*, PageID.67-68). The ALJ also found that "the evidence fails to establish the presence of the 'paragraph C' criteria." (*Id.*, PageID.68). Under Eleventh Circuit precedent, no more was required for the ALJ to show that Listing 12.15 had been considered.

McQueen complains that the ALJ "did not discuss the Part A criteria of

---

[15] The same paragraph A, B, and C criteria are used in multiple listings for mental disorders. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(2).

Listing 12.15." (Doc. 13, PageID.974). However, because a claimant must satisfy either the B or C criteria, in addition to the A criteria, to meet Listing 12.15, it was unnecessary for the ALJ to also evaluate the A criteria once he determined McQueen did not satisfy either the B or C criteria. McQueen also argues that the ALJ was required to provide a more detailed discussion of Listing 12.15 in this case because the Appeals Council, its order vacating the first unfavorable decision, stated that "consideration of Listing 12.15 at Step 3 is warranted" on remand to the ALJ. (Doc. 12, PageID.171). However, nothing in the Appeals Council's order required a detailed discussion of Listing 12.15. Moreover, the Appeals Council is in the best position to decide whether its own directives have been followed in a case; the fact it denied review of the ALJ's second unfavorable decision strongly suggests that it was satisfied the ALJ had carried out its instructions on remand in McQueen's case. The undersigned finds no reason to second-guess the Appeals Council on that point.

Finally, while McQueen cites to evidence in the record that he claims shows he meets Listing 12.15, he fails to explain how any of the evidence specifically relates to the criteria in paragraph A, B, or C. *See* 20 C.F.R. § 404.1525(c)(3) (claimant's impairments must "satisf[y] all of the criteria of [a] listing" in order meet that listing).[16] And regardless, the simple fact that McQueen can point to some evidence cutting against the ALJ's conclusion does not require reversal, since a

---

[16] McQueen does not argue in the alternative that he "medically equals" Listing 12.15. *See* 20 C.F.R. § 404.1525(c)(5) ("If your impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing.").

reviewing court must affirm if the decision reached is supported by substantial evidence, even if the evidence preponderates against it. *Ingram*, 496 F.3d at 1260. *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted));[17] *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.").[18]

In sum, McQueen has shown no reversible error in the ALJ's decision at Step Three.

---

[17] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

[18] Claiming that the ALJ "rejected the severity of [his] PTSD because there were never any overt signs of psychosis[,]" McQueen does argue that this was error because "Listing 12.15 does not require signs of psychosis and a claimant does not need to have psychosis in order to be found disabled." (Doc. 13, PageID.980). However, the ALJ's observation that McQueen exhibited no "objective signs of psychosis" was made at Step Four, and in the course of giving great weight to a medical opinion. (*See* Doc. 12, PageID.73). The ALJ did not purport to state that psychosis was required to meet Listing 12.15 at Step Three, nor did he purport to find McQueen not disabled solely on that basis.

### b.     Medical Opinion

McQueen's second, and final, claim of error is that the ALJ should not have given great weight to the medical opinion of Joanna Koulianos, Ph.D., a State Agency physician who reviewed the medical record at the initial level, because Dr. Koulianos's opinion was rendered early in the disability adjudication process, on November 29, 2016—a little over two months after McQueen filed the subject DIB application—and did not account for the "more than 3 years of additional evidence [that] was submitted subsequent to her opinion" by the time the ALJ rendered his operative decision on December 9, 2020. (Doc. 13, PageID.980). However, given how the disability adjudicative process proceeds, there will always be some delay between the date a State Agency reviewing physician renders an opinion and the issuance of an ALJ's decision on a claim, meaning there is always the possibility— indeed, the likelihood—that a claimant will submit additional evidence to the ALJ postdating the State Agency reviewer's opinion. Nothing in the regulations indicates that an ALJ must disregard a State Agency reviewing physician's opinion simply because additional evidence was submitted after it was made. Quite the opposite, in fact—they are to be evaluated under the same standards as opinions from examining and treating medical sources. *See* 20 C.F.R. § 404.1513a ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social

Security disability evaluation."); 20 C.F.R. § 404.1527(e) (for DIB claims filed before March 27, 2017, "[t]he rules in § 404.1513a apply" except in circumstances not relevant to the present case). And all medical opinions are evaluated for their consistency with the record as a whole, among other factors. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Just as the Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion[,]" *Bloodsworth*, 703 F.2d at 1240, the Commissioner may also give great weight to any physician's opinion if substantial evidence supports it. The ALJ's decision reflects that he considered Dr. Koulianos's opinion in conjunction with the record as a whole.

In assigning Dr. Koulianos's opinion great weight, the ALJ observed, among other things, that McQueen's "ability to interact with others in private and public settings is ... evident in his ability to live with a girlfriend/wife and uncle during the period at issue." (Doc. 12, PageID.73). McQueen challenges that finding, point to evidence he asserts "establish the strain of [his] impairments on his relationship with his wife[,]" such as his "refusal to bathe as well as ... being irritable, argumentative, and suspicious of others." (Doc. 13, PageID.980). The ALJ expressly considered such symptoms, noting that McQueen would present as "disheveled" and "irritable" at examinations, with a "constricted"/"flat" affect and signs of paranoia. (Doc. 12, PageID.73). Nevertheless, the ALJ found that, in spite of such symptoms, McQueen "otherwise presented as fully oriented without any active hallucinations

or other objective signs of psychosis" and "demonstrated the ability to maintain focus and complete simple tasks," as well as "the capacity for a full range of emotional qualities…" (*Id.*). The ALJ also noted that McQueen had received "conservative" treatment from his treating mental health provider through April 2018, "with routine counseling and medication management without any exacerbations or the need for psychiatric hospitalization[;]" that "updated records do not show any professional mental health treatment in 2019 or 2020; [that] records from the Mobile County Department of Health otherwise show grossly normal psychiatric findings and conservative treatment of depression and anxiety with prescription medications[;]" and that McQueen "did not report any changes in his ability to perform or enjoy daily activities." (*Id.*).

Based on these evidentiary findings, the ALJ determined that the "degree of limitation assessed [by Dr. Koulianos] is sufficient to account for any distractibility, irritability, or difficulties coping with stress caused by [McQueen]'s mental impairments." (*Id.*). Specifically, with regard to social interaction, Dr. Koulianos determined that McQueen's "interaction with the general public should be infrequent, and [while] he can tolerate non-intense interaction with co-workers and supervisors[,] supervision should be tactful and supportive." (*Id.*, PageID.72-73). McQueen does not deny that he was in fact able to live with his girlfriend/wife and uncle, only that his impairments caused difficulties in the social aspects of that arrangement; Dr. Koulianos's opinion appears to account for those impairments by limiting the social aspects of McQueen's ability to work. Even though the evidence

McQueen cites could support greater limitations in this area, McQueen fails to persuade the undersigned that the ALJ's decision to give great weight to Dr. Koulianos's opinion was unreasonable and was not supported by at least substantial evidence.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying McQueen's application for benefits is therefore due to be **AFFIRMED**.

## V.   *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying McQueen's September 19, 2016 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of September 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**